Shauck, C. J.
Counsel seem to be in accord as to the mode of challenging the validity of the act and, without devoting time to iriticism of the pleadings, we follow them in the consideration of that question. In the *546 brief on behalf of the state it is said that the act is merely declaratory of the common law. If that prop-' osition could be accepted it would relieve the cases of all difficulty, but for obvious reasons it cannot be accepted. The act creates criminal offenses and prescribes penalties to be imposed upon those who commit them; while, as is well known, we have no common law crimes in this state. Furthermore, it is quite clear that as to some of the persons and contracts within the operation of the act its purpose is to authorize proceedings against parties who are performing the terms of the forbidden contracts, while without the aid of the statute courts can denounce the contracts as unlawful only when by actions against defaulting parties they are called upon to aid in their enforcement. The act may in other respects exceed the common law.
We do not, however, deem it necessary or prudent to pass upon all the objections which are urged against the act. It is quite familiar doctrine that in determining the constitutional validity of statutes their different provisions are not necessarily subject to the same conclusion. They are not, unless they constitute a single scheme, and are so interdependent that it could not be rationally presumed that any of them would have been made if it had not been supposed that all could be enforced. The application of this doctrine to the act before us is quite clear in view of the differences in the nature of the several combinations which are forbidden and in the characters of those against whom the prohibition is directed. Moreover, that the legislature regarded the provisions of the act as severable, is indicated by the distributive force of the phrase “either, any or all,” preceding the enumeration of the forbidden purposes, as well as by the terms of the ninth section requiring that the provisions of the act shall be held to be cumulative with respect to one another as well as with respect to other laws.
*547 We are, therefore, to consider only those provisions of the act which are relevant to the cases before us. These cases are civil actions brought against independent corporations. The contract which we are asked to denounce is not incidental to the sale of property or any interest therein. It does not concern the good Avill of any business. It does not contemplate the formation of any corporation or other company for the carrying on of any business. In the subject of the contract the interests of the contracting parties are not adverse; they are not even diverse. The agreement, according to the allegations of the petition, has no purpose whatever except to prevent competition in the production, transportation and refining of petroleum, to the end that there may be received from the consumers of its products higher prices than would prevail under the condition of open competition. Counsel for the defendants admit that such a contract is within the inhibitions of the act, but deny the poAver of the legislature to inhibit it. Laws of this general character were entirely familiar to our English ancestors and to those who framed the American constitution. In view of the omnipotence of the English parliament, such enactments do not, of course, furnish a standard for the validity of enactments passed by our legislatures, whose poavers are subject to defined limitations. They do, however, show that such real or supposed invasion of the interests of the public was a well known subject for the exercise of legislative power. The definite proposition of counsel upon this point is that although the act is an exercise of legislative power, it transcends the provisions of the state and Federal constitutions which render inviolable the rights of liberty and property, which include the right to make contracts. It would be difficult to place too high an estimate upon these guaranties, and they include the right to make contracts. But it is settled that these guaranties are themselves limited by the *548 public welfare or the exercise of the police power. Although that power may not be conclusively defined, its nature and attributes have been the subject of much investigation. In all considerate discussions of the subject it is conceded that in the exercise of this power the legislature can prohibit only those uses of property which are hurtful to the public, and the inhibited use must be hurtful in a legal sense. That contracts like these are hurtful in that sense has been held in more cases than it would be practicable to cite. They abound throughout nearly three centuries of the development and administration of the common law in England and America. We cite, because of their full consideration of the subject and their direct application to legislation of this character, United States v. The Trans-Missouri Freight Association, 166 U. S., 290; United States v. Joint Traffic Association, 171 U. S., 505; United States v. The Addyston Pipe & Steel Co., 54 U. S. App., 723. These cases are applicable, since the provisions of the Federal anti-trust statute are not substantially different from those of the Ohio act which are brought under consideration in these cases, and there is no substantial difference between the contracts or constitutional provisions involved. That the contracts there considered were in restraint of commerce between states, served only to bring the subject within federal jurisdiction. The considerations affecting the validity of the legislation are in all respects as applicable here as there. Since the contract alleged in these petitions is for the sole purpose of restraining trade or limiting competition, we find no decision which doubts that they are in a legal sense hurtful to the public. There appear to be differences of opinion respecting the test of the reasonableness of contracts of sale where the good will of a business is in part the subject of the transaction and there are restraints imposed upon the vendor to secure the purchaser in the subject of the sale. But such doubts *549 do not extend to contracts whose only purpose is to* impose such restraints. Such contracts have been uniformly held to be unlawful. They cannot be reasonable in a sense which would bring the right to make them within the protection of any guaranty of either the state or federal constitution.

The demurrers are sustained.